**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| In re: | In Proceedings |
| Jerry W. Phipps, d/b/a Shawnee | Under Chapter 13 |
| Lawn Care, d/b/a Decals-N-More, | |
| Debtor. | Case No. 08-40685 |
| | |
| Jerry W. Phipps, | Adv. No. 08-4077 |
| | Adv. No. 08-4078 |
| Plaintiff, | |
| v. | |
| Peoples National Bank, NA, | |
| Defendant. | |

## OPINION

This matter is before the Court on Peoples National Bank, N.A.'s ("Creditor") objection to Chapter 13 Plan confirmation contending that the debtor's proposed Plan does not accurately reflect the collateral securing its liens. Additionally, two adversary actions have been brought by the debtor, each seeking to determine the validity, priority or extent of Creditor's liens. The issue before the Court is whether the Creditor's security interest attaches to the equipment of all of the debtor's businesses or is limited to the business equipment that the loan proceeds were used to purchase.

The facts in this case are undisputed. The debtor operates Decals-N-More and Shawnee Lawn Care as sole proprietorships. In the course of operating these businesses, the debtor entered into two loan agreements with Creditor. Each of these notes is collateralized by a mortgage on real property owned by the debtor and by a Commercial

1

Security Agreement and a Financing Statement granting Creditor a security interest in the debtor's equipment, among other things.

The first Note, #448400-26671, is for $30,200.00 and was signed on December 26, 2006. The Note initially lists "Jerry W. Phipps OBA: Decals N Moro" (sic), as borrower. The body of the Note, however, lists "Jerry W. Phipps" as borrower. Furthermore, the Note is signed solely by Phipps. This Note was renewed on January 5, 2007, by a renewal Note listing Phipps as borrower throughout and signed by Phipps. Securing the Note is a mortgage granted by Phipps to Creditor on the real property at 3740 Stewart Lane, Marion, Illinois, in the amount of $30,528.00. The Note is further secured by a Commercial Security Agreement ("CSA") through a cross-collateralization clause. The CSA initially lists the grantor as "Jerry W. Phipps DBA: Decals N Mora" (sic). The body of the CSA, however, lists "Jerry W. Phipps" as grantor and defines the word "Grantor" to mean "Jerry W. Phipps." It is signed solely by Phipps. Along with the CSA, Creditor filed a UCC Financing Statement listing the debtor as "Jerry W. Phipps."

The second Note, U.S. Small Business Administration Note #448400-26874, is for $120,000.00 and lists Creditor as the lender and Jerry W. Phipps as the borrower. This Note is signed solely by Phipps. It is secured by another mortgage granted by Phipps to Creditor for $120,000.00 against the same real property. This Note is secured by the aforementioned CSA and UCC Financing Statement as well as by a lien on a 2006 Haulmark trailer.

The debtor argues that the Notes are not secured by the lawn equipment he uses in the operation of Shawnee Lawn Care but, rather, are secured only by the equipment of

Decals-N-More, which he plans to surrender to Creditor. In support of his position, the debtor argues that the money he borrowed from Creditor was not used for Shawnee Lawn Care but for the operation of Decals-N-More. The debtor alleges that both he and Creditor had knowledge of this. The debtor further alleges that the language of the CSA and the Financing Statement is vague and should be construed against Creditor as the drafter of the documents. Finally, the debtor argues that at the time he entered into the loan agreements with Creditor, he only owned a half-interest in the equipment of Shawnee Lawn Care and, therefore, could not pledge it as collateral. While the debtor does not dispute the validity of the mortgages, CSA or Financing Statement, he does dispute the scope of Creditor's security interest.

Creditor argues that the scope of the CSA and Financing Statement encompasses the equipment of both Decals-N-More and Shawnee Lawn Care. Creditor further argues that the security interest attaches to the after-acquired interest in the Shawnee Lawn Care equipment.

As the existence, nature and extent of a security interest in property is generally governed by state law, *In re Powers*, 138 B.R. 916, 917 (C.D.Ill. 1992), the Court will look to Illinois courts for guidance. Is Creditor's security interest under the CSA and Financing Statement limited to the Decals-N-More equipment or does it extend to the equipment of Shawnee Lawn Care?

The Illinois Supreme Court has held that a sole proprietorship has no legal identity separate from that of the individual who owns it. *Vernon v. Schuster*, 179 Ill.2d 338, 347 (1997). While a sole proprietor may do business under a fictitious name if he chooses, doing so does not create an entity distinct from the person operating the

business. *Id*. "The individual who does business as a sole proprietor under one or several names remains one person, personally liable for all his or her obligations." *Id*. at 347-48.

Here, the promissory notes and CSA list the debtor in various ways. While the documents describe the borrower either as "Jerry W. Phipps" or as Jerry W. Phipps doing business or operating as a business, the description of the debtor is irrelevant to his personal liability. *See Id*. at 347. Whether the debtor operated one business or twenty, as long as he operated them as a sole proprietor, the businesses were not separate legal entities and the debtor is personally obligated for the debts he incurred in the course of operating them. *See Id.* at 347-48.

As the debtor is not a separate legal entity from any of his businesses, the debtor's argument that Creditor's security interest attaches to the equipment of only one business must fail. This conclusion, however, is not dispositive of the entire issue before the Court, as the scope of Creditor's security interest is strictly limited by the description in the CSA. *Matter of Schmaling*, 783 F.2d 680, 682 (7th Cir. 1986).

The sufficiency of the description in a security agreement is controlled by the Illinois Uniform Commercial Code, 810 ILCS 5/9-108. This section provides:

> (a) Sufficiency of description. Except as otherwise provided in subsections (c), (d), and (e), a description of personal or real property is sufficient, whether or not it is specific, if it reasonably identifies what is described.
>
> (b) Examples of reasonable identification. Except as otherwise provided in subsection (d), a description of collateral reasonably identifies the collateral if it identifies the collateral by:
>
>> (1) specific listing;
>>
>> (2) category;
>>
>> (3) except as otherwise provided in subsection (e), a type of collateral defined in the Uniform Commercial Code;

>    (4) quantity;
>
>    (5) computational or allocational formula or procedure; or
>
>    (6) except as otherwise provided in subsection (c), any other method, if the identity of the collateral is objectively determinable.

(c) Supergeneric description not sufficient. A description of collateral as "all the debtor's assets" or "all the debtor's personal property" or using words of similar import does not reasonably identify the collateral.

(d) Investment property. Except as otherwise provided in subsection (e), a description of a security entitlement, securities account, or commodity account is sufficient if it describes:

>    (1) the collateral by those terms or as investment property; or
>
>    (2) the underlying financial asset or commodity contract.

(e) When description by type insufficient. A description only by type of collateral defined in the Uniform Commercial Code is an insufficient description of:

>    (1) a commercial tort claim; or
>
>    (2) in a consumer transaction, consumer goods, a security entitlement, a securities account, or a commodity account.

810 ILCS 5/9-108.

In the instant case, the relevant description, listed in Paragraph 3 of the CSA, is:

"2006 Haulmark Trailer

All inventory, equipment, accounts (including but not limited to all health-care-Insurance receivables), chattel paper, instruments (including but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property: all good will relating to the foregoing property; all records and

data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media: and all supporting obligations relating to the foregoing property: all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

…

All Fixtures

…

In addition, the word "Collateral" also includes all the following, whether now owned or hereafter acquired, whether now existing or hereafter arising, and wherever located:

(A) All accessions, attachments, accessories, tools, parts, supplies, replacements of and additions to any of the collateral described herein, whether added now or later.

(B) All products and produce of any of the property described in this Collateral section.

(C) All accounts, general intangibles, instruments, rents, monies, payments, and all other rights, arising out of a sale, lease, consignment or other disposition of any of the property described in this Collateral section.

(D) All proceeds (including insurance proceeds) from the sale, destruction, loss, or other disposition of any of the property described in this Collateral section, and sums due from a third party who has damaged or destroyed the Collateral or from that party's insurer, whether due to judgment, settlement or other process.

(E) All records and data relating to any of the property described in this Collateral section, whether in the form of a writing, photograph, microfilm, microfiche, or electronic media, together with all of Grantor's right, title, and interest in and to all computer software required to utilize, create, maintain, and process any such records or data on electronic media.

Similarly, the Financing Statement covers the following collateral:

"All inventory, equipment, accounts (including but not limited to all health-care-Insurance receivables), chattel paper, instruments (including

6

but not limited to all promissory notes), letter-of-credit rights, letters of credit, documents, deposit accounts, investment property, money, other rights to payment and performance, and general intangibles (including but not limited to all software and all payment intangibles); all attachments, accessions, accessories, fittings, increases, tools, parts, repairs, supplies, and commingled goods relating to the foregoing property, and all additions, replacements of and substitutions for all or any part of the foregoing property; all insurance refunds relating to the foregoing property: all good will relating to the foregoing property; all records and data and embedded software relating to the foregoing property, and all equipment, inventory and software to utilize, create, maintain and process any such records and data on electronic media: and all supporting obligations relating to the foregoing property: all whether now existing or hereafter arising, whether now owned or hereafter acquired or whether now or hereafter subject to any rights in the foregoing property; and all products and proceeds (including but not limited to all insurance payments) of or relating to the foregoing property.

The debtor argues that because Creditor is the drafter of the agreement and used standard boilerplate promissory note language, any ambiguity must be construed in the debtor's favor. The debtor is correct in his assertion that contracts, including security agreements and financing statements, are construed against the drafter. *Signal Capital Corp. v. Lake Shore Nat. Bank*, 273 Ill.App.3d 761, 722 (1st Dist. 1995). The debtor is not correct, however, that the collateral descriptions are insufficiently specific.

In *Midkiff Implement Co. v. Worrall*, 116 Ill.App.3d 546, 548 (4th Dist. 1983), one creditor, Midkiff, argued that its security interest in four pieces of farm machinery superseded those of a later creditor, First National Bank, because the collateral description used by the Bank was insufficiently clear. The relevant portion of the collateral description in the Bank's security agreement was "all…farm machinery and equipment…now owned." The court disagreed with Midkiff and stated that "although the collateral description in the Bank's security agreement was very broad, it was sufficient to cover the four items." *Id*. The court went on to state that although more

7

careful practice may have dictated the use of a more exact description, such a description was sufficient. *Id*.

While the *Midkiff* court's decision was based on a prior version of the Illinois UCC, the decision still applies to the amended version. The test, under *Midkiff* and currently, as to the sufficiency of a description, "is that the description do the job assigned to it: make possible the identification of the collateral described." Uniform Commercial Code Comment 2 to 810 ILCS 5/9-108. The *Midkiff* court, quoting *James Talcott, Inc. v. Franklin National Bank of Minneapolis*, 194 N.W.2d 775, 782 (S.Ct.Minn. 1972), stated that a security agreement should not be held unenforceable unless it is so ambiguous that its meaning cannot reasonably be construed from the language of the agreement itself. Further, "[i]f the debtor himself is willing to give a creditor a security interest in everything he owns, the code does not prevent it, whether his action is prudent or not. Upon default, the creditor takes everything to which the debtor previously agreed; hence, identification is no problem." *Midkiff*, 116 Ill.App.3d at 549-50. The court concluded that while the collateral description was broad, it covered exactly what it said it covered - all of the farm machinery and equipment – and there was no argument that the four tractors were not pieces of farm machinery or equipment. *Id*. at 550.

Notably, since *Midkiff* was decided, the section of the Illinois UCC concerning the sufficiency of collateral descriptions has been amended to give examples of what is acceptable and what is not. Included among the acceptable examples is description by category.[1] Here, Creditor describes the collateral by category as "equipment."

---

[1] (b) Examples of reasonable identification. Except as otherwise provided in subsection (d), a description of collateral reasonably identifies the collateral if it identifies the collateral by:

8

Equipment is defined by the UCC as "goods other than inventory, farm products, or consumer goods." 810 ILCS 5/9-102(33). Since the description used by Creditor is specifically allowed by the UCC, it is sufficient and "make[s] possible the identification of the collateral described." Uniform Commercial Code Comment 2 to 810 ILCS 5/9-108.

The debtor makes a final argument that the equipment of Shawnee Lawn Care could not be included in the collateral securing the agreements because, at the time the agreements were entered into, the debtor only had a half-interest in the equipment. The debtor did not acquire full rights to the equipment until after the Note was signed. "The determination of whether a creditor's security interest encompasses property acquired after the date of the security agreement is governed by the intent of the parties as expressed in the agreement." *City of Chicago v. Michigan Beach Housing Co-op.*, 242 Ill.App.3d 636, 644 (1st Dist. 1993). Here, the language of both the CSA and the Financing Statement indicate that it was the parties' intention to include both equipment owned by the debtor at the time of the agreements as well as those rights "whether now existing or hereafter arising, whether now owned or hereafter acquired..." As this was the parties' intention, the after-acquired equipment of Shawnee Lawn Care is subject to Creditor's lien.

---

(1) specific listing;
(2) category;
(3) except as otherwise provided in subsection (e), a type of collateral defined in the Uniform Commercial Code;
(4) quantity;
(5) computational or allocational formula or procedure; or
(6) except as otherwise provided in subsection (c), any other method, if the identity of the collateral is objectively determinable.

810 ILCS 5/9-108(b)(2)

For all these reasons, the Court finds that the security interest of Creditor extends to the business equipment of both Decals-N-More and Shawnee Lawn Care. Accordingly, Creditor's objection to confirmation is **SUSTAINED**. Additionally, as it is unclear what issues, if any, remain to be resolved in the pending adversary cases, the parties are to file a status report with the Court within ten days of the date of this opinion setting forth any remaining issues.

See Order entered this date.


ENTERED: December 10, 2008

                                         /s/ Kenneth J. Meyers
                                  UNITED STATES BANKRUPTCY JUDGE/4